IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOAQUÍN DAVID RICO-TAPIA, | CIV. NO. 25-00379 SASP-KJM |
| Plaintiff/Petitioner, | ORDER GRANTING PRELIMINARY INJUNCTION |
| vs. | |
| Michael J.D. Smith, Warden, Federal Detention Center, Honolulu, Hawaiʻi; Polly Kaiser, Acting Field Office Director, San Francisco Field Office, Immigration and Customs Enforcement; Pam Bondi, Attorney General of the United States; Kristi Noem, Secretary of Homeland Security, in their official capacities, | |
| Defendants/Respondents. | |

## ORDER GRANTING PRELIMINARY INJUNCTION

On September 9, 2025, Petitioner Joaquín David Rico-Tapia ("Rico-Tapia") filed a "Verified Petition Writ of Habeas Corpus" ("Petition") pursuant to 28 U.S.C. § 2241, challenging the legality of his detention by Immigration and Customs Enforcement ("ICE") and seeking, *inter alia*, his immediate release from ICE custody, or, in the alternative, a bond hearing before an immigration judge within fourteen (14) days. [Pet. Writ Hab. Corp. ("Pet."), ECF No. 2 at PageID.12–13, 33.] In his Petition, Rico-Tapia alleges that he was "forcibly" detained by ICE on July 23, 2025, after his Section 240 proceedings[1] were dismissed at the request of the government. [*Id.* ¶ 3.] Six (6) days after filing his Petition, on September 15, 2025, Rico-Tapia

---

[1] Section 240 proceedings refer to proceedings conducted by an immigration judge to decide the inadmissibility or deportability of an alien under the Immigration and Nationality Act. *See* 8 U.S.C. § 1229a.

filed a "Motion for Ex Parte Temporary Restraining Order" ("TRO Motion").[2] [Mot. Ex Parte

TRO ("TRO Mot."), ECF No. 11.] The TRO Motion seeks the same relief requested under the

Petition. [*See id.* ¶¶ 1, 19a.] In this Order, the Court rules on the TRO Motion only and converts

that motion into a request for a preliminary injunction.[3] For the reasons stated herein,

Rico-Tapia's request for injunctive relief is GRANTED.

I.         **FACTUAL BACKGROUND[4]**

           Rico-Tapia is a native of Venezuela and a citizen of Colombia. [Pet. ¶ 2; TRO

Mot. ¶ 2; Leon Ho ("Ho") Dec., ECF No. 16-1 ¶ 7.] On August 14, 2022, he entered the United

States unlawfully at or near Eagle Pass, Texas, and was subsequently arrested and detained by

United States Customs and Border Protection. [Ho Dec. ¶ 8.] The same day, Rico-Tapia was

paroled[5] into the United States under Section 212(d)(5) of the Immigration and Nationality Act

("INA"); his parole status was effective until October 14, 2022. [*Id.* ¶ 9; Pl. Exh. A, ECF

No. 12-1.]

           For "nearly two years" after being paroled, Rico-Tapia lived, worked, and

complied with all supervision requirements of the Department of Homeland Security ("DHS").

[TRO Mot. ¶ 2.] On October 5, 2022, he reported to the ICE Enforcement and Removal

---

[2] The Court has already stated, and Rico-Tapia has acknowledged, that the TRO Motion will not
be decided ex parte. [9/16/25 Minutes, ECF No. 14.]

[3] An order on the Petition is forthcoming.

[4] At the hearing on Rico-Tapia's Petition and TRO Motion, Respondents agreed that they do not
dispute the underlying facts in this case, specifically, all events occurring from August 14, 2022,
through September 25, 2025.

[5] "Parole" in the immigration context refers to the discretionary decision by the Secretary of
Homeland Security to allow inadmissible aliens to be physically present within the United States
"for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A).

Operations ("ERO") in San Francisco. [Ho Dec. ¶ 9.] Then, on December 27, 2022, Rico-Tapia

reported to the San Francisco ICE ERO Alternatives to Detention, where he was served a Notice

to Appear and simultaneously released on his own recognizance "[i]n accordance with

section 236[6] of the [INA] and the applicable provisions of Title 8 of the Code of Federal

Regulations." [*Id.* ¶ 10; Resp. Exh. C, ECF No. 20-3 (Notice to Appear dated December 27,

2022); Resp. Exh. D, ECF No. 20-4 at PageID.389 (Order of Release on Recognizance).] The

Notice to Appear classified Rico-Tapia as "an alien present in the United States who has not been

admitted or paroled." [Resp. Exh. C at PageID.385.] On the same date, the Notice to Appear was

filed with the Executive Office of Immigration Review ("EOIR"), and Rico-Tapia was placed in

removal proceedings under Section 240 of the INA based on his status as an alien present

without admission or parole.[7] [Ho Dec. ¶ 11.] On June 29, 2023, Rico-Tapia applied for asylum

with the immigration court. [Pet. ¶ 2.] On February 13, 2024, the EOIR Concord Immigration

Court issued a Notice of In-Person Hearing for March 26, 2025. [Ho Dec. ¶ 11.]

   On July 23, 2025, ICE moved to dismiss the Section 240 proceedings after

determining that Rico-Tapia was subject to expedited removal under Section 235 of the INA.[8]

[Ho Dec. ¶ 12; Pl. Exh. B, ECF No. 12-2.] On the same date, over the objection of Rico-Tapia,

ICE's motion to dismiss was granted. [*Id.*] Following the hearing, Rico-Tapia "was forcibly

taken into ICE custody," and he was served a Warrant for Arrest of Alien ("Warrant") and a

Notice of Custody Determination. [Pet. ¶ 3; Ho Dec. ¶ 13.] The Warrant directed "[a]ny

---

[6] Section 236 is codified at 8 U.S.C. § 1226.

[7] The filing of a Notice to Appear with the immigration court initiates removal proceedings under
8 U.S.C. § 1229(a).

[8] Section 235 is codified at 8 U.S.C. § 1225.

immigration officer authorized pursuant to sections 236 and 287 of the [INA]" to serve the

Warrant, while the Notice of Custody Determination indicated that Rico-Tapia was being

detained "[p]ursuant to the authority contained in section 236 of the [INA] and part 236 of title 8,

Code of Federal Regulations." [Resp. Exh. G, ECF No. 20-7 at PageID.400; Resp. Exh. H, ECF

No. 20-8 at PageID.402.] On July 25, 2025, Rico-Tapia was transferred to the Honolulu Federal

Detention Center ("FDC Honolulu"), where he remains to date. [Ho Dec. ¶ 14; TRO Mot. ¶¶ 2,

10.] Then, on August 12, 2025, ICE issued Rico-Tapia a Notice and Order of Expedited

Removal, stating that pursuant to Section 235(b)(1) of the INA, Rico-Tapia is inadmissible under

INA Section 212(a)(7)(A)(i)(I). [Ho Dec. ¶ 14.]

On August 14, 2025, Rico-Tapia again applied for asylum.[9] [Pet. ¶ 2.] On

September 3, 2025, the United States Citizenship and Immigration Services interviewed

Rico-Tapia and made a positive credible fear finding. [Ho Dec. ¶ 15.] Three (3) days later, on

September 6, 2025, Rico-Tapia was served with a Notice to Appear again classifying him as an

alien present in the United States who has not been admitted or paroled and charged as

removable under INA Section 212(a)(6)(A)(i) and (a)(7)(A)(i)(I). [Resp. Exh. K, ECF No. 20-11

(Notice to Appear dated September 6, 2025); Ho Dec. ¶ 16.] This notice was filed in the EOIR

Honolulu Immigration Court on the same date, effectively placing Rico-Tapia in removal

proceedings pursuant to Section 240 of the INA. [Ho Dec. ¶ 16.] On September 16, 2025, the

EOIR Honolulu Immigration Court issued a Notice of In-Person Hearing for September 17,

2025, at the Honolulu Immigration Court. [*Id.* ¶ 17.] On two separate dates, September 17 and

September 25, 2025, Rico-Tapia requested a continuance to retain counsel. [*Id.* ¶¶ 18–19.]

---

[9] It is unclear from the parties' filings whether the immigration court resolved Rico-Tapia's
asylum application from June 2023.

Prior to his detainment on July 23, 2025, Rico-Tapia maintained stable employment in construction and delivery, integrated into his community, demonstrated good moral character, and obeyed all laws. [Pet. ¶¶ 2, 5.] Rico-Tapia's supervisors describe him as reliable, respectful, and eager to learn. [*Id.* ¶ 6.] Moreover, during the 2023–2024 academic year, Rico-Tapia was enrolled in classes at West Contra Costa Adult Education. [*Id.*; Pet'r Exh. F, ECF No. 12-6 at PageID.179–81.] Furthermore, Rico-Tapia has no criminal record. [Pet. ¶ 2.]

## II.    PROCEDURAL BACKGROUND

While detained at FDC Honolulu, on September 9, 2025, Rico-Tapia filed his Petition, seeking *inter alia* immediate release from ICE custody, or, in the alternative, a bond hearing before an immigration judge within fourteen (14) days. [Pet. ¶¶ 12–13, 33.] To preserve its jurisdiction, on September 12, 2025, this Court issued an Entering Order ("EO") directing Respondents in this matter to not remove Rico-Tapia from the United States or transfer him out of this district unless and until the Court directs otherwise. [9/12/25 EO, ECF No. 8.] The EO also scheduled a status conference for September 16, 2025. On September 15, 2025, Rico-Tapia filed the instant TRO Motion, [ECF No. 11,] raising the same claims as the Petition, along with an "Application for Order to Show Cause ('OSC') Re Temporary Restraining Order Preliminary Injunction" ("OSC Application") [OSC App., ECF No. 13].

Counsel for both parties appeared for a status conference on September 16, 2025. [9/16/25 Minutes, ECF No. 14.] At the status conference, the parties agreed on a briefing schedule, and the Court set a hearing on the Petition, TRO Motion, and OSC Application for October 6, 2025. [*Id.*] The parties timely submitted their respective pleadings, and the October 6, 2025, hearing ("October 6 hearing") proceeded as scheduled. [ECF Nos. 15–18 (pleadings), 19 (10/6/25 hearing minutes).] At the conclusion of the October 6 hearing, the Court issued an oral

ruling, granting Rico-Tapia's request for a preliminary injunction and ordering that he be provided a bond hearing before a neutral decision-maker in immigration court within fourteen (14) days of the October 6 hearing. [ECF No. 19.] The Court also directed Respondents to certify their compliance with the Court's ruling. Further, the Court noted that this written Order would follow, which now supersedes the oral ruling at the October 6 hearing.

III.        DISCUSSION

        A.        Jurisdiction

        Respondents argue that this Court lacks jurisdiction to review Rico-Tapia's claims for relief presented in his Petition and TRO Motion. They contend that the writ of habeas corpus is not available to an alien seeking to challenge what they describe is a discretionary decision made by the Attorney General.

        Under 28 U.S.C. § 2241, district courts may grant writs of habeas corpus to prisoners who demonstrate they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus proceedings have long served as a mechanism by which aliens challenge Executive interpretations of immigration laws. *I.N.S. v. St. Cyr*, 533 U.S. 289, 306–07 (2001) (citations omitted). They also have served as a means through which aliens have challenged the legality of immigration-related detention. *Id.* at 301–06 (citations omitted). In this context, the law is clear: while district courts may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the requirements of the Constitution. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

        Under certain circumstances, however, Congress may modify or limit the right to habeas review, and over the years, it has specifically done so in the immigration context.

Congress has enacted several statutory provisions limiting the circumstances in which judicial review of deportation decisions is available. Respondents in this case rely on some of these provisions. But none of them apply here. One such provision is 8 U.S.C. § 1252(e),[10] which outlines the outer limits of judicial review of orders under Section 1225(b). Other provisions include 8 U.S.C. § 1252(g)[11] (which is applicable to decisions "to *commence* proceedings, *adjudicate* cases, or *execute* removal orders," *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999)); 8 U.S.C. § 1252(a)(2)(A)(i)[12] (barring judicial review of "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)");

---

[10] 8 U.S.C. § 1252(e)(1) provides, in relevant part, as follows: "no court may--(A) enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection." 8 U.S.C. § 1252(e)(1). For habeas corpus proceedings, 8 U.S.C. § 1252(e)(2) limits judicial review of any determination made under Section 1225(b)(1) "to determinations of--(A) whether the petitioner is an alien, (B) whether the petitioner was ordered removed under such section, and (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title, such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to section 1225(b)(1)(C) of this title." *Id.* § 1252(e)(2).

[11] 8 U.S.C. § 1252(g) states the following: "Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

[12] 8 U.S.C. § 1252(a)(2)(A)(i) provides as follows: "Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review-- (i) except as provided in subsection (e), any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title."

8 U.S.C. § 1252(b)(9)[13] (which is applicable to questions "arising from any action taken or proceeding brought to remove an alien from the United States"); and 8 U.S.C. § 1226(e)[14] (which precludes challenges to a discretionary judgment or a decision made by the Attorney General regarding detention or release). These various provisions do not eliminate a district court's jurisdiction over all immigration-related detention claims, and they impose only narrow jurisdictional limits. Respondents have failed to show that the above-cited provisions apply to Rico-Tapia's claims, particularly since Rico-Tapia is not subject to mandatory detention under Section 1225 of the INA (8 U.S.C. § 1225), *see infra* Section III.C.3, and his Petition and TRO Motion are not based on the assertion that DHS placed him in expedited removal proceedings. The United States Supreme Court specifically addressed the narrow reach of Sections 1252 and 1226(e) in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), ultimately deciding that those statutes did not present a jurisdictional bar to an alien who was claiming entitlement to a bond hearing pending resolution of his immigration proceedings. *Jennings*, 583 U.S. at 292–96.

   Here, Rico-Tapia is not challenging an order for removal, the commencement of proceedings, the adjudication of cases, the execution of a removal order, the process by which his removability will be determined, or the exercise of discretion by DHS to detain him. Contrary

---

[13] Under 8 U.S.C. § 1252(b)(9), "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact."

[14] 8 U.S.C. § 1226(e) states the following: "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."

to Respondents' argument, a decision to detain is independent of an action taken to remove an alien; while the former is aimed at ensuring that the alien is not a flight risk or a danger to the community, the focus of the latter is the removal of the alien. *See Jennings*, 583 U.S. at 295 n.3. The majority in *Jennings*, in fact, discounted the very logic suggested by Respondents here. *See id.* (internal quotation marks omitted) ("The concurrence contends that detention is an action taken . . . to remove an alien and that therefore even the narrowest reading of arising from must cover the claims raised by respondents. . . . We do not follow this logic."). Hence, whether Rico-Tapia's detention is subject to Section 1225 or 1226 is not a discretionary decision made by the Attorney General. It is, instead, a matter guided by the plain text of those provisions, the larger statutory scheme, and the reasoning set forth in the applicable caselaw. Rico-Tapia has brought this habeas action to challenge the constitutionality of his detention without a bond hearing. As "[h]abeas is the exclusive remedy . . . for the prisoner who seeks 'immediate or speedier release' from confinement," *Skinner v. Switzer*, 562 U.S. 521, 525 (2011) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)), Rico-Tapia's challenge is properly within this Court's habeas jurisdiction.

## B.    Administrative Exhaustion

Respondents contend that the issues raised in Rico-Tapia's Petition and TRO Motion are best left to the immigration court. Once a determination has been made by the immigration judge, Respondents add, this determination may then be appealed to the Board of Immigration Appeals ("BIA") and potentially thereafter, to the Ninth Circuit Court of Appeals ("Ninth Circuit"). These assertions are unavailing. In this Court's view, there is much uncertainty in whether the immigration court would find Rico-Tapia eligible for a bond hearing under 8 U.S.C. § 1226(a). For years, Respondents had treated Rico-Tapia as subject to Section 1226, and

then suddenly, in a complete turn of events, their position changed despite Rico-Tapia's

consistent compliance with DHS requirements and the law. Now, Respondents insist that

Rico-Tapia must be detained under 8 U.S.C. § 1225 while maintaining a façade that he has

always been subject to Section 1225. This Court cannot conclude that Rico-Tapia would have

received the process he is entitled to in immigration court. See *infra* Sections III.C.2–3 and

III.D.1 for a discussion of the process owed. Additionally, Respondents' argument that the proper

forum for Rico-Tapia's TRO claims is immigration court fails to account for the BIA decisions

indicating that it would be ineffective for a detained alien to challenge his detention in

immigration court. *See Matter of Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025); *Matter of Q. Li*, 29

I. & N. Dec. 66 (B.I.A. 2025). Based on these BIA decisions, it appears likely that an

immigration judge considering a request for a bond hearing from Rico-Tapia would have denied

such request on the basis that he is not eligible because he is subject to mandatory detention. The

Court finds that it would have been futile for Rico-Tapia to seek a bond hearing before an

immigration judge. Therefore, prudential exhaustion is not required. *See Castillo-Villagra v.*

*I.N.S.*, 972 F.2d 1017, 1024 (9th Cir. 1992) (citing *El Rescate Legal Servs. v. EOIR*, 959 F.2d

742, 747 (9th Cir. 1992)) ("The prudential exhaustion requirement does not apply where it would

be futile.").

### C.    Detention under Section 1225 or 1226

A primary subject of contention between the parties is whether Rico-Tapia is

subject to Section 1225 or Section 1226 of the INA. Respondents insist that Rico-Tapia's

detention falls within 8 U.S.C. § 1225(b)(1), while Rico-Tapia maintains that the provision

applicable to his detainment is 8 U.S.C. § 1226(a). The distinction between Sections 1225 and

1226 is significant because an alien detained under 1225 is subject to mandatory detention, while

an alien detained under 1226 is subject to detention on a discretionary basis. In other words, an alien whose detention falls under Section 1226 could take advantage of the greater procedural and substantive rights that an alien detained under Section 1225 could not.

      *1.*    *Section 1225*

      The Court begins with a brief overview of Section 1225 of the INA. Section 1225 provides that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." 8 U.S.C. § 1225(b)(2)(A). An "applicant for admission" under Section 1225 is an alien "who has not been admitted or who arrives in the United States."[15] *Id.* § 1225(a)(1). Such persons are subject to mandatory inspection by immigration officers. *Id.* § 1225(a)(3). This process for deciding "who *may enter the country*" generally begins at the borders and ports of entry, "where the Government must determine whether an alien *seeking to enter the country* is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 286–87 (2018) (emphases added).

      For certain applicants for admission, Section 1225 authorizes "expedited removal." *See* 8 U.S.C. § 1225(b)(1). As relevant here, an applicant is subject to expedited removal under Section 1225(b)(1) if "the applicant (1) is inadmissible because he or she lacks a valid entry document; (2) has not been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility; and (3) is among those whom the Secretary of Homeland Security has designated for expedited removal."

---

[15] "Arriving alien" is defined as "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport." 8 C.F.R. § 1.2.

*Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109 (2020) (internal quotation marks

omitted) (citing 8 U.S.C. § 1225(b)(1)(A)(i), (iii)(I)–(II)). Once an applicant is determined

"inadmissible," the immigration officer "shall order the alien removed from the United States

without further hearing or review unless the alien indicates . . . an intention to apply for

asylum."[16] 8 U.S.C. § 1225(b)(1)(A)(i). Aliens detained under Section 1225 are not entitled to a

bond hearing. *See Jennings*, 583 U.S. at 297 ("[N]either § 1225(b)(1) nor § 1225(b)(2) says

anything whatsoever about bond hearings.").

       While U.S. immigration law authorizes the detention of "certain aliens *seeking*

*admission into the country* under" Section 1225, it also authorizes the detention of "certain aliens

*already in the country* pending the outcome of removal proceedings under" Section 1226. *Id.* at

289 (emphases added).

       2.    *Section 1226*

       "Even once inside the United States, aliens do not have an absolute right to

remain here" and may still be subject to removal proceedings under Section 1226 of the INA.

*Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Section 1226 "provides the general process for

arresting and detaining aliens who are *present in the United States* and eligible for removal."

*Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (emphasis added). It states that,

while removal proceedings are pending, "an alien may be arrested and detained." 8 U.S.C.

§ 1226(a)(1). When an alien is detained under Section 1226(a), his initial custody determination

is made by an ICE officer. *Rodriguez Diaz*, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)).

Under 8 U.S.C. § 1226(a)(2), the government may release the alien on bond or conditional

---

[16] Indeed, applicants can avoid expedited removal by raising an asylum claim, and the INA
provides a process for such applicants. *See* 8 U.S.C. § 1225(b)(1)(A)(ii), (b)(1)(B).

parole. An alien will be released if he proves "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Rodriguez Diaz*, 53 F.4th at 1196 (quoting 8 C.F.R. § 236.1(c)(8)). "The second opportunity for bond, a hearing before an immigration judge, often occurs soon thereafter." *Miranda v. Garland*, 34 F.4th 338, 362 (4th Cir. 2022); 8 C.F.R. § 236.1(d)(1). At this hearing, the immigration judge will order the alien's release if the alien proves, by a preponderance of the evidence, "that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk.'" *Rodriguez Diaz*, 53 F.4th at 1197 (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). In making this determination, the immigration judge considers various factors, including the alien's ties to the United States, his employment history, criminal record, history of immigration violations, and manner of entry into the United States. *Id.* (citing *Matter of Guerra*, 24 I. & N. Dec. at 40). The immigration judge also determines whether bond or other conditions of release are appropriate. *Id.* (citing *Matter of Guerra*, 24 I. & N. Dec. at 40; *see* 8 U.S.C. § 1226(a)(2)).

Even when released, the alien's bond or parole may be revoked. Under Section 1226(b), the "Attorney General at any time may revoke a bond or parole," rearrest the alien, and detain him. 8 U.S.C. § 1226(b). Even so, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

The exception for release under Section 1226 is found in subsection (c)(1) and applies to aliens who have committed "one of several enumerated categories involving criminal offenses and terrorist activities." *Id.* at 289 (citing 8 U.S.C. § 1226(c)(1)). It also applies to the following categories of aliens if they have been arrested for, charged with, or convicted of certain

crimes[17]: those deemed inadmissible under Sections 1182(a)(6)(A) (aliens who are "present in the United States without being admitted or paroled"), 1182(a)(6)(C) (aliens "who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit"), and 1182(a)(7) (aliens who lack valid documentation). 8 U.S.C. § 1226(c)(1)(E)(i).

> 3.    *Whether Section 1225 or Section 1226 Applies to Rico-Tapia*

To put it briefly, the INA authorizes immigration officials to detain aliens who are either seeking admission into the country, or already in the country. When read most naturally, the detention scheme in Section 1226 is supplemented by Section 1225(b). Taken together, Section 1225 covers persons "seeking to enter the country," while Section 1226 applies to persons "already present in the country." This conclusion is supported not only by the plain text of those statutes and the larger statutory scheme, but also the Supreme Court's analysis in *Jennings v. Rodriguez*, 583 U.S. 281 (2018). The *Jennings* majority recognized the process of decision in which immigration officials must engage on a daily basis in deciding "(1) who may enter the country and (2) who may stay here after entering." 583 U.S. at 285–86. When evaluating and describing this process, the *Jennings* majority equated Section 1225 with aliens "seeking admission into the country," while associating Section 1226 with aliens "already in the country pending the outcome of removal proceedings." *Id.* at 286–89.

Respondents urge this Court to conclude that aliens who lack valid documentation are subject to mandatory detention under Section 1225(b) regardless of their presence within the country. Apart from this perspective contradicting an earlier position held by DHS, Respondents

---

[17] These crimes consist of burglary, theft, larceny, shoplifting, assault of a law enforcement officer, and "any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E)(ii).

would have this Court adopt an interpretation that would, in essence, render Section 1226

meaningless. "[O]ne of the most basic interpretive canons" is that "a statute should be construed

so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void

or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up) (quoting *Hibbs

v. Winn*, 542 U.S. 88, 101 (2004)). If an interpretation of one provision "would render another

provision superfluous," courts will presume that interpretation is incorrect "even when Congress

enacted the provisions at different times." *Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010)

(citations omitted). Respondents' new interpretation that presence within the country is

immaterial also runs afoul of the *Jennings* Court's construction of Sections 1225 and 1226, as

well as a plain reading of Section 1225(b) stating that an alien is subject to this provision if he

has not "been physically present in the United States continuously for the 2-year period

immediately prior to the date of the determination of inadmissibility," 8 U.S.C.

§ 1225(b)(1)(A)(iii)(II). The Court finds Respondents' argument unpersuasive.[18]

---

[18] The Court also notes that aliens residing in the United States who, at an earlier point in time, had entered the country without valid documentation were not historically treated as "arriving aliens" under Section 1225, but rather, were subject to Section 1226. *See Jennings*, 583 U.S. at 289 (emphases added) ("In sum, U.S. immigration law authorizes the Government to detain certain aliens *seeking admission into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)."); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (emphasis added) ("8 U.S.C. § 1226[] provides the general process for arresting and detaining aliens who are *present in the United States* and eligible for removal.") (emphasis added); *Torres v. Barr*, 976 F.3d 918, 927 (9th Cir. 2020) (first emphasis added) (internal quotation marks omitted) (quoting *Hose v. I.N.S.*, 180 F.3d 992, 994 (9th Cir. 1999) (en banc)) (noting that, prior to the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, which amended and expanded the INA, a "deportation hearing was the usual means of proceeding against an alien *already physically [but not lawfully] in the United States*," while an "exclusion hearing" was limited to "entering" aliens—those "*outside the United States seeking admission*").

As Section 1225(b) does not apply to aliens who are *already present in the*
*country*, it does not apply to Rico-Tapia. At the time of his detainment in July 2025, Rico-Tapia
was not seeking to "enter the country," but rather, had already been present within the United
States for nearly three (3) years. Indeed, the parties do not dispute that Rico-Tapia has been in the
country since August 14, 2022. Moreover, Respondents' own documents classify Rico-Tapia not
as an "arriving alien," but as "an alien present in the United States." [Resp. Exhs. C, K.] Hence,
because he was detained as an alien "already in the country," Rico-Tapia is not subject to
mandatory detention under Section 1225(b). Nor is his detention mandatory under
Section 1226(c), as Rico-Tapia does not have a criminal record and has not been arrested for or
charged with any of the crimes enumerated in Section 1226(c)(1)(E)(ii) (burglary, theft, larceny,
shoplifting, assault of a law enforcement officer, and "any crime that results in death or serious
bodily injury to another person"). Instead, Rico-Tapia's detention falls squarely within the scope
of the default process for arrest and discretionary detention under Section 1226(a).

The evidence in the record reinforces the Court's conclusion. Up until recently,
Respondents had consistently treated Rico-Tapia as subject to Section 1226. When they released
him on his own recognizance in December 2022, Respondents issued an order stating that
Rico-Tapia's release was "[i]n accordance with section 236" of the INA, which is codified at 8
U.S.C. § 1226. [Resp. Exh. D at PageID.389.] Then, more than two years later, on July 23, 2025,
Respondents produced a Warrant for Rico-Tapia's arrest that directed any "immigration officer
authorized pursuant to section[] 236" of the INA to serve the Warrant. [Resp. Exh. G at
PageID.400.] Respondents acknowledged, at the October 6 hearing, that this Warrant was issued
despite a lack of change in Rico-Tapia's circumstances. Furthermore, once Rico-Tapia was
detained pursuant to the Warrant, Respondents issued a "Notice of Custody Determination"

specifically indicating that Rico-Tapia's detention was based on "the authority contained in section 236 of the [INA] and part 236 of title 8, Code of Federal Regulations." [Resp. Exh. H at PageID.402.] For Respondents to now say unabashedly that Rico-Tapia is subject to mandatory detention under Section 1225 is directly at odds with their own documents, disingenuous, and lacks support in both the record and the law.[19]

In sum, it is evident Rico-Tapia's detention is discretionary under Section 1226(a). Consequently, pursuant to federal regulations, he was entitled to receive a bond hearing at the outset of his detention. *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

### D.    Preliminary Injunction

Rico-Tapia argues that, because he is entitled to a bond hearing, injunctive relief is appropriate. The standard for issuing a TRO is substantially identical to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The Court assumes, without deciding, that the TRO Motion seeks a mandatory injunction, as the relief requested urges this Court to direct Respondents to take the

---

[19] The Court further notes that Respondents' lack of full transparency in this case is troublesome. Prior to the Court's oral directive, Respondents initially failed to produce any of the documents referenced in the declaration attached to their response to Rico-Tapia's Petition and TRO Motion. When questioned about this failure, Respondents stated that the documents are inconsequential to the ultimate decision as to whether Rico-Tapia is entitled to the relief he seeks. This Court disagrees. The information provided in the documents relate directly to the Court's findings on which section of the INA applies to Rico-Tapia. To reiterate, such information clearly demonstrates that Rico-Tapia is not an "arriving alien" and that his detention was based on the authority of Section 1226. Considering the principal facts contained within the documents and Respondents' complete reversal--without justification--of their own determination that Rico-Tapia was detained pursuant to Section 1226, this Court is compelled to believe, without finding, that Respondents did not initially provide the documents perhaps to conceal the true nature of Rico-Tapia's detainment and to perpetuate a contrary narrative that Rico-Tapia is subject to mandatory detention under Section 1225.

affirmative step of releasing Rico-Tapia or providing him with a bond hearing. *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (citing *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996)). In seeking injunctive relief, Rico-Tapia must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). The Ninth Circuit has adopted the sliding scale approach under which a preliminary injunction could issue where the likelihood of success is such that Rico-Tapia has raised serious questions going to the merits and a hardship balance tips sharply toward him, assuming the other two elements of the *Winter* test have been satisfied. *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011) (citation omitted).

Based on the current record, the Court finds that the standard for a mandatory injunction is met and that such an injunction is warranted. As an initial matter, unlawful detention constitutes an "extreme or very serious damage" that cannot be compensable in damages. *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) (quoting *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879). Secondly, as will be explained, the merits of this case are not doubtful—Rico-Tapia's likelihood of success follows directly from the dictates of due process. The Court also notes that the injunction in this case is not unprecedented, as other district courts have similarly required the government to either release the alien or conduct bond hearings in the immigration context. *See, e.g.*, *Hernandez Marcelo v. Trump*, No. 3:25-cv-00094-RGE-WPK, 2025 WL 2741230 (S.D. Iowa Sept. 10, 2025); *Francisco T. v. Bondi*, File No. 25-CV-03219 (JMB/DTS), 2025 WL 2629839 (D. Minn. Aug. 29, 2025); *Kostak v. Trump*, CIVIL ACTION NO. 3:25-1093, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Arrazola-*

*Gonzalez v. Noem*, Case No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug.

15, 2025); *Castellon v. Kaiser*, Case No. 1:25-cv-00968 JLT EPG, 2025 WL 2373425 (E.D. Cal.

Aug. 14, 2025).

          1.     *Likelihood of Success on the Merits*

          With respect to the first *Winter* factor, likelihood of success on the merits, the

Ninth Circuit has held that "the Due Process Clause applies to all 'persons' within the United

States, including aliens, whether their presence here is lawful, unlawful, temporary, or

permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citations omitted). "Freedom from

imprisonment—from government custody, detention, or other forms of physical restraint—lies at

the heart of the liberty that Clause protects." *Id.* at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71,

80 (1992)). Even where the revocation of a person's freedom is authorized by statute, that person

may retain a protected liberty interest under the Due Process Clause. *See Gagnon v. Scarpelli*,

411 U.S. 778, 782 (1973) (explaining that due process requires a pre-deprivation hearing before

revocation of probation); *Morrissey v. Brewer*, 408 U.S. 471, 481–82 (1972) (explaining the

same in the parole context).

          As the Supreme Court has recognized, due process is a flexible concept that calls

for procedural protections as the particular situation demands. *Mathews v. Eldridge*, 424 U.S.

319, 334 (1976) (citing *Morrissey*, 408 U.S. at 481). In determining the specific dictates of due

process, this Court must consider three factors: (1) "the private interest that will be affected by

the official action"; (2) "the risk of an erroneous deprivation of such interest through the

procedures used, and the probable value, if any, of additional or substitute procedural

safeguards"; and (3) "the Government's interest, including the function involved and the fiscal

and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

First, Rico-Tapia has a substantial private interest in remaining free from detention. Prior to his detainment in July 2025, Rico-Tapia had been out of custody for more than two years, and during most if not all of that time, he had worked, paid taxes, established community ties, enrolled in classes, complied with DHS requirements, and maintained a clean record. His detention years later denies him that freedom.

Second, the risk of an erroneous deprivation of liberty is high where, as here, Rico-Tapia has not received a bond hearing. "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). And detention under this statute is justified when an alien poses a flight risk or a danger to the community. *See Zadvydas*, 533 U.S. at 690. As stated previously, Rico-Tapia has no criminal record, and since his arrival in 2022, he has complied with DHS requirements. Moreover, DHS not only paroled Rico-Tapia into the United States, but also released him on his own recognizance in December 2022. The present allegation by Respondents that Rico-Tapia must now be detained is directly at odds with their decision to release him, and they have not presented any evidence suggesting that there was a change in circumstance between then and July 2025, when they arrested him. To this extent, the probable value of additional procedural safeguards, i.e., a bond hearing, is substantial.

Third, Respondents' interest in detention is low, particularly considering Rico-Tapia's compliance with DHS requirements and his ability to preserve a clean record. Additionally, custody hearings in immigration court appear routine given the requirements imposed by federal regulations.

On balance, the *Mathews* factors demonstrate that Rico-Tapia is entitled to process, and that process should have been afforded to him immediately upon detention. Accordingly, with respect to his due process claim, Rico-Tapia has shown that he is likely to succeed on the merits.[20]

### 2.    *Irreparable Harm*

In addition to a likelihood of success on the merits, Rico-Tapia must establish that he is likely to suffer irreparable harm in the absence of preliminary relief. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). As this Court has concluded that Rico-Tapia's detention without a bond hearing is likely unconstitutional, Rico-Tapia has carried his burden as to irreparable harm.

### 3.    *Balance of Equities and Public Interest*

As to the last two *Winter* factors, balance of equities and public interest, they merge when the government is the nonmoving party. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Roman v. Wolf*, 977 F.3d 935, 940–41 (9th Cir. 2020) (per curiam)). Faced with "a conflict between [procedures that are not burdensome] and preventable human suffering," this Court must conclude that the balance of hardships tips decidedly in favor of Rico-Tapia. *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)). Public interest also weighs in Rico-Tapia's favor, as an injunction ensures that Respondents' actions comply with the Constitution. "Generally, public interest concerns are implicated when a constitutional right has been violated, because all

---

[20] Given this conclusion, the Court need not determine the likelihood of success of the additional claims raised in the Petition.

citizens have a stake in upholding the Constitution." *Hernandez*, 872 F.3d at 996 (quoting *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005)); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) (citation omitted) ("It is always in the public interest to prevent the violation of a party's constitutional rights.").

          *4.     Conclusion as to Preliminary Injunction*

Based on the foregoing, Rico-Tapia has carried his burden of establishing that a preliminary injunction is warranted in this case.

## IV.        CONCLUSION AND ORDER

For the reasons stated, this Court ORDERS the following:

1.        Rico-Tapia's TRO Motion, ECF No. 11, is converted to a request for preliminary injunction, and it is GRANTED.

2.        Rico-Tapia is entitled to a bond hearing before a neutral arbiter in immigration court, and Respondents shall provide this hearing within fourteen (14) days of the October 6, 2025, hearing.[21] At such bond hearing, Rico-Tapia shall bear the burden of proving, by a preponderance of the evidence, that he is not a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk.

3.        Immediately upon providing Rico-Tapia a bond hearing, Respondents shall certify their compliance with the Court's Order through a filing on the docket.

//

//

//

---

[21] In a status report filed October 8, 2025, Respondents indicated that a bond hearing in immigration court is currently scheduled for October 15, 2025, at 8:30 a.m. [Resp. Status Report, ECF No. 20 at PageID.375.]

4.      This Order does not affect the preliminary relief that was granted on

September 12, 2025, to preserve the Court's jurisdiction, *see* ECF No. 8. That relief continues, as

the Court had indicated, unless and until it directs otherwise.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, October 10, 2025.



Shanlyn A.S. Park
United States District Judge

23